Rhonda H. Wills (SBN 323435)
rwills@rwillslawfirm.com
WILLS LAW FIRM, PLLC
1776 Yorktown, Suite 570
Houston, Texas 77056
Telephone: (713) 528-4455
Facsimile: (713) 528-2047

ATTORNEY FOR PLAINTIFFS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS GEIGER, CHRISTINA GOMEZ, AMANDA HAYNES, PRISCILLA ESCARCEGA, and GARA BOOTEN, Individually and on Behalf of All Others Similarly Situated,<br><br>             Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS, LLC, SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, and TWC ADMINISTRATION LLC,<br><br>             Defendants. | CASE NO. 2:18-CV-00158-DMG-GJS<br><br>Hon. Dolly M. Gee<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:         October 16, 2020<br>Time:        10:00 a.m.<br>Courtroom:  Courtroom 8C |

## **TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………….. 1

II.     FACTUAL BACKGROUND ......................................................... 2

III.    THE SETTLEMENT AND RELEASE ........................................ 3

        A.    Settlement Amount and Distribution…………………………4

        B.    The Release…………………………………………………...6

              1.    Release of Class Members' Claims. ...........................6

              2.    General Release Pertaining to Class Representatives ...............6

IV.     THE PROPOSED NOTICE CLEARLY INFORMS THE CLASS OF THE SETTLEMENT TERMS ................................................... 7

        A.    The Class Notice Satisfies Due Process…………………………7

        B.    The Proposed Notice of Pendency of Class and Collective Action and Proposed Settlement Is Accurate and Informative……………………8

V.      THE   COURT   SHOULD   PRELIMINARILY   APPROVE   THE SETTLEMENT   AS   REASONABLE   AND   FAIR   AND   AUTHORIZE NOTICE TO THE CLASS…………………………………………… 9

        A.    The Two-Step Settlement Approval Process…………………………9

        B.    The Settlement Merits a Preliminary Finding of Reasonableness…..11

              1.    The Settlement Amount Is Favorable in Light of the Strength of Plaintiffs' Case and the Potential Recovery at Trial ...............11

                    a.    Overtime Claim…………………………………………11

                    b.    Wage Statement Claim………………………………...12

                    c.    PAGA Claim……………………………………………13

              2.    The   Settlement   Is   Well-Informed   Based   Upon   Plaintiffs' Substantial Investigation and Discovery ...................................14

              3.    Arm's Length Negotiations .....................................14

              4.    The   Risk   and   Delay   that   Plaintiffs   Would   Face   Absent Settlement Are Significant......................................................15

5.    Experienced Counsel Support the Reasonableness of the Settlement ........................................................................15

C.    The Proposed Service Awards to the Class Representatives Are Reasonable……………………………………………..16

D.    The Proposed Payments to Plaintiffs for Attorneys' Fees and Litigation Expenses Are Reasonable……………………………………...18

VI.    CONCLUSION…………………………………………………….20

# TABLE OF AUTHORITIES

**CASES**

*Amador v. City of Ceres*,
    No. 1:17-cv-00552-DAD-BAM, 2019 WL 935496 (E.D. Cal. Feb. 26, 2019)
    ..................................................................................................................15

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020)..................................................................15

*Cf. Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009)..........................................................6

*Cicero v. DirecTV, Inc.*,
    No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010).............18

*Cohorst v. BRE Properties, Inc.*,
    No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923 (S.D. Cal. Nov. 14, 2011) 9

*Dunk v. Ford Motor Co.*,
    48 Cal. App. 4th 1794 (Cal. Ct. App. 1996) ................................................10

*Eisen v. Carlisle & Jacqueline*,
    417 U.S. 156 (1972) .......................................................................................7

*Feao v. UFP Riverside*,
    No. CV 17-3080 PSG (JPRx), 2019 U.S. Dist. LEXIS 189441 (C.D. Cal.
    Jan. 8, 2019) ...................................................................................................9

*Figueroa v. Allied Building Products Corp.*,
    No. SACV 16-02249 AG (KESx), 2018 WL 4860034 (C.D. Cal. Sept. 24,
    2018)..............................................................................................................10

*Flores v. TFI Int'l Inc.*,
    No. 12-cv-05790-JST, 2019 WL 1715180 (N.D. Cal. Apr. 17, 2019) .........18

*Garcia v. Gordon Trucking, Inc.*,
    No. 1:10-CV-0324 AWI SKO, 2012 U.S. Dist. LEXIS 160052 (E.D. Cal.
    Oct. 31, 2012) ...............................................................................................14

*Glass v. UBS Fin. Servs.*,
    No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8509 (N.D. Cal. Jan. 17,
    2007)..............................................................................................................17

*Gomez v. H & R Gunlund Ranches, Inc.*,
  No. CV F 10-1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. Nov. 23, 2011)
  ................................................................................................18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).....................................................................10

*Harris v. Amgen Inc.*,
  No. CV 07-5442 PSG (PLAx), 2017 WL 6048215 (C.D. Cal. Apr. 4, 2017)
  ..............................................................................................9, 10

*Hopson v. Hanesbrands Inc.*,
  No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3,
  2009)...........................................................................................14

*In re Cellphone Term. Fee Cases*,
  180 Cal. App. 4th 1110 (Cal. Ct. App. 2009) .................................................10

*In re Heritage Bond Litigation*,
  No. 02-ML-1475 DT, 2004 WL 7339813 (C.D. Cal. Aug. 9, 2004)............10

*Kullar v. Foot Locker Retail, Inc.*,
  168 Cal. App. 4th 116 (Cal. Ct. App. 2008) ..........................................10, 11

*Louie v. Kaiser Foundation Health Plan, Inc.*,
  No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. Oct. 6,
  2008)...........................................................................................17

*Munoz v. BCI Coca-Cola Bottling Co. of L.A.*,
  186 Cal. App. 4th 399 (Cal. Ct. App. 2010) ..................................................10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................................9

*O'Sullivan v. Diamond Parking, Inc.*,
  No. C 07-3389 VRW, 2008 WL 11404948 (N.D. Cal. Nov. 16, 2008) .......11

*Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982)..............................................................10, 11

*Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v.
  Anderson*,
  390 U.S. 414 (1968) ...................................................................................15

*Rivas v. BG Retail, LLC*,
No. 16-cv-06458-BLF, 2020 U.S. Dist. LEXIS 8712 (N.D. Cal. Jan. 16, 2020) ........................................................................................18

*Stevens v. Safeway Inc.*,
No. CV 05-01988 MMM (SHx), 2008 WL 11496497 (C.D. Cal. Feb. 25, 2008) ..........................................................................................10

*Trotsky v. Los Angeles Fed. Sav. & Loan Assn.*,
48 Cal. App. 3d 134 (Cal. Ct. App. 1975) ........................................9

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ................................................17


**STATUTES**

Cal. Labor Code § 226(e) ..................................................................12

Cal. Labor Code § 2699(e)(2)...........................................................13


**TREATISES**

Manual for Complex Litig. § 21.632 (4th ed.) ...................................9

Rubenstein, Newberg on Class Actions § 13:13 (5th ed. 2011)...............9

# I.    INTRODUCTION

Plaintiffs Louis Geiger, Christina Gomez, Amanda Haynes, and Gara Booten, individually and as representatives of Class Members (collectively, "Plaintiffs") seek preliminary approval of a $499,000.00 non-reversionary, direct-mail class action settlement of state and federal wage and hour claims against Defendants Charter Communications, Inc., Charter Communications, LLC, Spectrum Management Holding Company, LLC, and TWC Administration LLC, (hereinafter, "Defendants" or "Charter").

Other than trial, nearly every aspect of complex litigation has been conducted in this action: motion to amend pleadings, depositions (named plaintiffs, fact witnesses, and corporate representative), numerous sets of written discovery, motions for Rule 23 class certification and FLSA conditional certification, motion for approval of notice forms, motion to dismiss Rule 23 class members and preclude notice to FLSA collective action members, *ex parte* application for an order to stay enforcement of order denying motion to dismiss, motion for reconsideration of order denying motion to dismiss and preclude notice, summary adjudication motion, and decertification motions.[1]

After nearly three years of litigation, the parties now wish to resolve this matter. The proposed Settlement reached here encompasses the wage and hour claims of: (a) 50 Class Members, including Class Representatives Louis Geiger, Christina Gomez, Amanda Haynes, and Gara Booten; and (b) 202 PAGA Aggrieved Employees.

At issue on this Unopposed Motion for Preliminary Approval is whether the Settlement appears to be in the range of what the Court may approve as sufficient to warrant sending notice to the Class Members. As demonstrated herein, the Settlement is highly advantageous to the Class Members and Aggrieved Employees and merits preliminary approval by the Court. By this motion, the parties request that the Court:

---

[1] *See* Declaration of Rhonda H. Wills ("Wills Decl."), ¶ 10.

(1) Grant preliminary approval of the Settlement reached in this action; (2) Approve the proposed form of Notice of Pendency of Class and Collective Action and Proposed Settlement; (3) Schedule a deadline for filing the motion for final approval of the Settlement and Plaintiffs' application for attorneys' fees and expenses; and (4) Schedule a hearing on final approval of the Settlement.

## II.    FACTUAL BACKGROUND

On November 17, 2017, Plaintiffs filed a class action complaint styled as *Louis Geiger, et al., Individually and on Behalf of all Others Similarly Situated v. Charter Communications, Inc., Charter Communications, LLC, Spectrum Management Holding Company , LLC , and TWC Administration LLC* (Case No. BC683546) in the Superior Court of the State of California, County of Los Angeles (the "Action"). Defendants removed the Action to the United States District Court for the Central District of California [Doc. 1], where it is pending before this Honorable Court.

On April 2, 2018, Class Counsel filed a First Amended Complaint ("FAC"). [Doc. 26]. The FAC alleges that individuals who worked as dispatchers at Defendants' El Segundo, California dispatch center were denied overtime, meal periods, rest breaks, compliant itemized wage statements, were not paid all wages due at termination, and were subject to unfair competition.  In the FAC, Plaintiffs seek damages and other relief on behalf of themselves and the members of the Settlement Class against Defendants under the federal Fair Labor Standards Act, the California Labor Code and the California Business & Professions Code, Section 17200 *et seq.*, including unpaid overtime, wage statement penalties, interest, attorneys' fees and costs, and injunctive relief.  Plaintiffs also assert a claim for penalties under the California Private Attorneys General Act (PAGA), Labor Code section 2699 *et seq.* as representatives of the Aggrieved Employees.  On April 17, 2018, Defendants filed an Answer to the FAC, denying all of Plaintiffs' claims and asserting affirmative defenses [Doc. 27]. Then, on January 23, 2019, the Court certified a Rule 23 class

1  action of dispatchers with respect to Plaintiffs' overtime and wage statement claims

2  and appointed the undersigned counsel a Class Counsel [Doc. 64].

3       This Action has been actively and heavily litigated. Class Counsel has

4  conducted extensive investigation in this case, including interviewing witnesses,

5  propounding extensive written discovery including interrogatories and multiple sets

6  of requests for production of documents, reviewing extensive thousands of pages of

7  documents and records produced by Defendants, and taking numerous depositions of

8  employees of Defendants.[2]  Defendants also propounded multiple interrogatories and

9  sets of requests for production of documents and took depositions of Plaintiffs,[3] and

10 Defendants reviewed Plaintiffs' written discovery responses and documents

11 produced.

12      In November 2019, the Parties participated in mediation before mediator Lisa

13 Klerman, a highly-respected neutral with extensive experience in mediating wage and

14 hour class actions.[4]  Although the case did not settle at mediation, counsel for

15 Defendants and Class Counsel renewed settlement discussions after full briefing of

16 Defendants' motions for decertification and summary judgment.[5]  As a result of these

17 subsequent efforts, the Parties reached a class-wide settlement that is the basis for the

18 Stipulation of Settlement, and is hereby submitted to the Court for approval.

## III.    THE SETTLEMENT AND RELEASE

20      The $499,000.00 settlement amount resolves the claims of (a) 50 Class

21 Members, including Class Representatives Louis Geiger, Christina Gomez, Amanda

22 Haynes, and Gara Booten; and (b) 202 PAGA Aggrieved Employees. Because the

23 Settlement is non-reversionary, Charter will be paying the full settlement amount.

24 Because there is no requirement to submit a claim form, checks will be mailed to all

---

[2] *See* Wills Decl., ¶ 15.
[3] *See* Wills Decl., ¶ 15.
[4] *See* Wills Decl., ¶ 16.
[5] *See* Wills Decl., ¶ 16.

Class Members and Aggrieved Employees who do not opt out. The other key terms of the Settlement are as follows:

**A.      Settlement Amount and Distribution**

The following items are to be paid out of the $499,000.00 Settlement Amount:

(1) Class Counsel's attorneys' fees in an amount not to exceed forty percent (40%) of the Settlement Amount ($199,600.00), subject to Court approval. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 35.b.].

(2) Reasonable litigation expenses incurred by Class Counsel not to exceed $30,000.00, subject to Court approval. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 35.b.].

(3) Defendants will pay a total of $88,943.75 to Aggrieved Employees and the California Labor & Workforce Development Agency ("LWDA") in full satisfaction of all claims for PAGA civil penalties under the California Labor Code, Wage Orders, regulations, and/or other provisions of law alleged to have been violated in the FAC with respect to Aggrieved Employees ("General PAGA Penalties Fund").  Pursuant to PAGA, 75% of the General PAGA Penalties Fund, or $66,707.81, will be paid to the LWDA, and the remaining 25%, or $22,235.94 will be paid to the Aggrieved Employees. The payments to Aggrieved Employees will be reported to the taxing authorities by means of an IRS Form 1099. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 35.c.].

(4) Class Representative Payments to Plaintiffs Louis Geiger, Christina Gomez, Amanda Haynes, and Gara Booten, in an amount not to exceed $5,000.00 each, as reasonable additional compensation for the time and effort expended by them in connection with the initiation and maintenance of the Action and for their agreement to provide Defendants with a General Release and their execution of separate individual settlement agreements. The Class Representative Payments will be reported to the taxing authorities by means of an IRS Form 1099. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 35.d.].

(5) Defendants will pay a total of $96,556.25 to the Overtime Class, which consists of all individuals who worked for any of the Defendants as dispatchers at Defendants' El Segundo, California dispatch center from November 17, 2013 through August 22, 2019 and who do not have an arbitration agreement with Defendants. The Overtime Class includes all 50 Class Members, including the four Class Representatives. The Parties have agreed to the amounts that each Overtime Class Member will receive based on the number of days each Overtime Class Member worked as a dispatcher at Defendants' El Segundo, California dispatch center from November 17, 2013 through August 22, 2019. The Overtime Class Member Payments will have all legally required withholdings and deductions made, and an IRS form W-2 will be issued. Defendants will be solely responsible for paying the employer's share of any payroll taxes related to the settlement payments. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 35.e.].

(6) Defendants will pay a total of $53,900.00 to the Wage Statement Class, which consists of all individuals who worked for any of the Defendants as dispatchers at Defendants' El Segundo, California dispatch center from November 17, 2016 through August 22, 2019 and who do not have an arbitration agreement with Defendants. The Wage Statement Class includes Class Representatives Amanda Haynes and Gara Booten, as well as 16 Class Members. The Parties have agreed to the amounts that each Wage Statement Class Member will receive based on the number of pay periods during the time each Wage Statement Class Member worked as a dispatcher at Defendants' El Segundo dispatch center from November 17, 2016 through August 22, 2019. The Wage Statement Class Member Payments will be reported to the taxing authorities by means of an IRS Form 1099. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 35.f.]

(7) The Settlement proposes the appointment of a Settlement Administrator to be determined and approved by the Court and allocates up to $10,000.00 for the payment of Settlement Administrator Fees, subject to Court approval.

**B.      The Release**

**1.      Release of Class Members' Claims**

According to the "Release of Claims by the Class, Plaintiffs, and Aggrieved Employees" section of the Settlement [Joint Stipulation of Class and PAGA Settlement and Release, ¶¶ 48-51], the Settlement Class and each Class Member shall in exchange for the consideration recited in the Joint Stipulation of Class and PAGA Settlement and Release will be deemed to have released Defendants and its affiliated entities and individuals from:

> [A]ny and all wage and hour claims, causes of action, damages, liabilities, debts, penalties, obligations, and demands, including, but not limited to, any and all claims for attorneys' fees, costs, interest, and statutory and civil penalties that were, or could have been, asserted in the Action...

The Settlement's release is limited in scope and should be granted preliminary approval. *See Cf. Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) (finding significant in granting preliminary approval of class settlement: "These released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants.")

**2.      General Release Pertaining to Class Representatives**

The Class Representatives, unlike rank and file Class Members and PAGA Aggrieved Employees, will give a general release of all potential claims against Defendants, as part of consideration for their proposed individual Class Representative Payments of $5,000 each. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 51.].

## IV.   THE PROPOSED NOTICE CLEARLY INFORMS
## THE CLASS OF THE SETTLEMENT TERMS

The method and the content of the notice to Class Members and Aggrieved Employees should be designed to fairly apprise them of the terms of the proposed settlement, their individual recovery amount, the procedures to follow in filing written objections, and how to appear at the final approval hearing.

### A.   The Class Notice Satisfies Due Process

Class Members are entitled to receive the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 173 (1972). Notice by mail provides such "individual notice to all members" in accordance with due process standards. *Id.* Individual notice through the mail is "clearly the 'best notice practicable'" where the names and addresses of class members are easily ascertainable. *Id.* at 175.

The Parties propose having a third-party Settlement Administrator to administer this settlement and independently review and verify documentation associated with any requests to be excluded and to pay the claims to the Class Members and Aggrieved Employees. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 37.].

Within 10 business days of the Court entering the Order granting preliminary approval, Defendants' Counsel shall provide to the Settlement Administrator information regarding all Class Members and Aggrieved Employees, including name, last known address, last known telephone number, social security number and amounts to be paid pursuant hereto. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 39.]. Within 10 business days thereafter, the Settlement Administrator will mail the Notice of Pendency of Class and Collective Action and Proposed Settlement[6] to all Class Members by First-Class Mail to their current or last known

---

[6] The proposed Notice of Pendency of Class and Collective Action and Proposed Settlement is attached to the Joint Stipulation of Class and PAGA Settlement and Release as Exhibit A.

address on file at Charter, following an updated review of the National Change of Address Registry by the Administrator. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 40.]. Any envelopes returned to the Settlement Administrator as nondelivered will be utilized by the Settlement Administrator to locate Class Members, and the Settlement Administrator will take appropriate steps (which may include skip tracing) to ensure that the Notice of Pendency of Class and Collective Action and Proposed Settlement is sent to all Class Members. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 41.]. Class Members are to be given 45 days to request exclusion and/or object to the Settlement. [Joint Stipulation of Class and PAGA Settlement and Release, ¶¶ 42, 45.].

**B.**    **The Proposed Notice of Pendency of Class and Collective Action and Proposed Settlement Is Accurate and Informative**

The Notice of Pendency of Class and Collective Action and Proposed Settlement sets forth the terms and provisions of the Settlement; the application for reimbursement of litigation costs and attorneys' fees; the date, time and place of the Final Approval hearing; and the procedure and deadlines for opting out of the Settlement or submitting an objection to the Settlement. The proposed Class Notice is neutral in its language. It summarizes the proceedings to date, as well as the terms and conditions of the Settlement in an informative manner that is accurate, objective and understandable. The Notice also states that Final Approval has yet to be made. In sum, the proposed Notice fairly apprises the members of the class "of the terms of the proposed compromise and of the options open to dissenting class members." *Cohorst v. BRE Properties, Inc.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *5 (S.D. Cal. Nov. 14, 2011) (quoting *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.*, 48 Cal. App. 3d 134, 151–52 (Cal Ct. App. 1975)).

## V.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AS REASONABLE AND FAIR AND AUTHORIZE NOTICE TO THE CLASS

### A.   The Two-Step Settlement Approval Process

A class action settlement requires approval of the court after a hearing. Court approval is a two-step process. First, the court conducts a preliminary review of the settlement and the proposed notice to class members. *See Feao v. UFP Riverside*, No. CV 17-3080 PSG (JPRx), 2019 U.S. Dist. LEXIS 189441, at *12–13 (C.D. Cal. Jan. 8, 2019). At the preliminary approval stage, courts make a "preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *See* Manual for Complex Litig. § 21.632 (4th ed.). "The goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness." *See* Rubenstein, Newberg on Class Actions § 13:13 (5th ed. 2011). Courts merely require at the preliminary approval stage that the proposed settlement be "within the range of possible approval." *Id.* (quotations omitted).

Then, after notice of the settlement has been distributed, the court takes into account any objections by class members and the extent to which class members have elected to opt out of the settlement, and makes a final determination whether to approve the settlement. *Harris v. Amgen Inc.*, No. CV 07-5442 PSG (PLAx), 2017 WL 6048215, at *2–3, *5 (C.D. Cal. Apr. 4, 2017) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004). In deciding whether a settlement is reasonable at the final fairness stage, courts consider a number of factors: (1) "the strength of plaintiff's case;" (2) "the risk, expense, complexity and likely duration of further litigation; (3) "the risk of maintaining class action status throughout the trial;" (4) "the extent of discovery completed and the stage of the proceedings;" (5) "the experience and view of counsel;" and (6) "the reaction of the

class members to the proposed settlement." *Harris*, 2017 WL 6048215, at *2 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The trial court has broad discretion in determining whether a settlement is fair, *Figueroa v. Allied Building Products Corp.*, No. SACV 16-02249 AG (KESx), 2018 WL 4860034, at *2 (C.D. Cal. Sept. 24, 2018) (quoting *Hanlon*, 150 F.3d at 1026), but the court must "independently satisfy[] itself that the consideration being received for the release of the class members' claims is reasonable in light of the strengths and weaknesses of the claims and the risks of the particular litigation." *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 129 (Cal. Ct. App. 2008). This requires a record that "allows 'an understanding of the amount that is in controversy and the realistic range of outcomes of the litigation.'" *Munoz v. BCI Coca-Cola Bottling Co. of L.A.*, 186 Cal. App. 4th 399, 409 (Cal. Ct. App. 2010) (quoting *Kullar*, 168 Cal. App. 4th at 120).

A "presumption of fairness" exists when: (1) a settlement is reached through arm's length bargaining; (2) investigation and discovery are sufficient to allow counsel and the Court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. *In re Heritage Bond Litigation*, No. 02-ML-1475 DT, 2004 WL 7339813, at *2 (C.D. Cal. Aug. 9, 2004) (citing *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1801–02 (Cal. Ct. App. 1996)).

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation." *Stevens v. Safeway Inc.*, No. CV 05-01988 MMM (SHx), 2008 WL 11496497, at *8 (C.D. Cal. Feb. 25, 2008) (quoting *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). California public policy "generally favors the compromise of complex class action litigation," and therefore supports approval of settlements when possible. *In re Cellphone Term. Fee Cases*, 180 Cal. App. 4th 1110, 1118 (Cal. Ct. App. 2009). Other than to evaluate the settlement "to reach a reasoned judgment that the agreement is not the product of fraud or

overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate," a court should give regard to "what is otherwise a private consensual agreement[] between the parties." *Officers for Justice*, 688 F.2d at 625.

**B.    The Settlement Merits a Preliminary Finding of Reasonableness**

As to each factor that the Court will ultimately consider at the final fairness hearing, the Settlement is within the range of reasonableness, and thus preliminary approval is appropriate.

**1.    The Settlement Amount Is Favorable in Light of the Strength of Plaintiffs' Case and the Potential Recovery at Trial**

The amount of the settlement in light of the strength of the plaintiff's case is the most important "reasonableness" factor. *See O'Sullivan v. Diamond Parking, Inc.*, No. C 07-3389 VRW, 2008 WL 11404948, at *3–4 (N.D. Cal. Nov. 16, 2008) (quoting *Kullar*, 168 Cal. App. 4th at 129–30). Here, the Settlement will provide the 50 Class Members with direct payments averaging more than $3,000 each, not including the Class Representative Payments.[7] The Settlement's monetary relief compares favorably with Plaintiffs' counsel's estimated full relief for the Class Members and Aggrieved Employees.

**a.    Overtime Claim**

Plaintiffs' counsel estimate that the maximum amount of damages recoverable based on Plaintiffs' off-the-clock overtime theory, which is based on the unpaid time Class Members spent waiting to boot up and shut down their computers before and after clocking in and out, is approximately $95,556.25.[8]

This amount was determined by analyzing the time and pay records for all 50 Class Members who worked as dispatchers at Defendants' El Segundo, California dispatch facility between November 17, 2013 and August 22, 2019, when Defendants

---

[7] *See* Wills Decl., ¶ 17.
[8] *See* Wills Decl., ¶ 18.

closed the El Segundo dispatch facility.[9] Each of the 50 Class Members' overtime rates were calculated at time-and-one-half his or her regular rate of pay, and each Class Member was allocated unpaid overtime wages based on the alleged off-the-clock boot up and shut down time for each day in which each Class Member worked at least 8 hours per day or at least 40 hours per week.[10]

Counsel estimate that the Settlement's monetary relief for the Class Members' overtime claim constitutes an approximate full recovery of each Class Members' alleged unpaid overtime based on Plaintiffs' boot up and shut down off-the-clock overtime theory.[11]

### b.    Wage Statement Claim

Plaintiffs' counsel estimate that the maximum amount of damages recoverable based on Plaintiffs' wage statement claim, which is derivative of Plaintiffs' unpaid overtime claim, is approximately $53,900.00.[12]

This amount was determined by analyzing the time and pay records for all 18 Wage Statement Class Members who worked as dispatchers at Defendants' El Segundo, California dispatch facility between November 17, 2016 and August 22, 2019, when Defendants closed the El Segundo dispatch facility.[13] Each of the 18 Wage Statement Class Members' itemized wage statement penalties were calculated at $50 for the initial pay period in which he/she allegedly suffered an itemized wage statement violation and $100 per pay period for each subsequent pay period in which Plaintiffs allegedly suffered an itemized wage statement violation, not to exceed an aggregate penalty of $4,000 per employee.[14] *See also* Cal. Labor Code § 226(e).

---

[9] *See* Wills Decl., ¶ 18.
[10] *See* Wills Decl., ¶ 18.
[11] *See* Wills Decl., ¶ 19.
[12] *See* Wills Decl., ¶ 20.
[13] *See* Wills Decl., ¶ 20.
[14] *See* Wills Decl., ¶ 20.

Counsel estimate that the Settlement's monetary relief for the Wage Statement Class Members' wage statement claim constitutes an approximate full recovery of each Wage Statement Class Members' unpaid itemized wage statement penalties.[15]

### c. PAGA Claim

Finally, Plaintiffs allege that Charter is liable for PAGA penalties each time it allegedly failed to pay wages due to all 202 individuals who worked for any of the Defendants as dispatchers at Defendants' El Segundo, California dispatch center from October 25, 2017 through August 22, 2019.

Under the terms of the proposed Settlement, Defendants will pay a total of $88,943.75 to Aggrieved Employees and the LWDA to satisfy Plaintiffs' PAGA claim. Pursuant to PAGA, 75% of the General PAGA Penalties Fund, or $66,707.81, will be paid to the LWDA, and the remaining 25%, or $22,235.94 will be paid to the Aggrieved Employees. Thus, the General PAGA Penalties Fund under the Settlement is approximately 17.82% of the total gross Settlement Amount.

Plaintiffs estimate that the total exposure on their representative PAGA claims could be substantial depending on the number of Labor Code violations they succeeded in proving at trial. However, the award of such penalties is a matter of discretion for the Court, and a full award of such penalties could be denied as "oppressive" under § 2699(e)(2). Given these risks, which must be added to the risk that Plaintiffs will lose on some or all of the underlying claims giving rise to PAGA penalties, Plaintiffs view the allocation of $88,943.75 of the Settlement to PAGA penalties to be reasonable.[16]

When the parties have "negotiated a good faith amount" for PAGA penalties, and "there is no indication that this amount was the result of self-interest at the expense of other Class Members," such an amount is generally considered reasonable. *See Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900,

---

[15] *See* Wills Decl., ¶ 21.
[16] *See* Wills Decl., ¶ 22.

at *23-24 (N.D. Cal. Apr. 3, 2009); *see also, e.g., Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 U.S. Dist. LEXIS 160052, at *21-22 (E.D. Cal. Oct. 31, 2012) (approving PAGA allocation of $10,000 in gross settlement of $3.7 million).

This factor therefore weighs in favor of approval of the settlement agreement.

## 2.     The Settlement Is Well-Informed Based Upon Plaintiffs' Substantial Investigation and Discovery

Over a period of nearly three years, this Action has been actively and heavily litigated. Class Counsel has conducted extensive discovery and investigation in this case, including interviewing witnesses, propounding extensive written discovery including interrogatories and multiple sets of requests for production of documents, reviewing extensive information and records provided by Defendants, and taking numerous depositions of employees of Defendants.[17]  Defendants also propounded multiple interrogatories and sets of requests for production of documents and took depositions of Plaintiffs.[18]

## 3.     Arm's Length Negotiations

In November 2019, the Parties participated in mediation before mediator Lisa Klerman, a highly-respected neutral with extensive experience in mediating wage and hour class actions.[19] Comprehensive briefs containing numerous exhibits and detailed damages calculations were also submitted to the mediator in advance of mediation.[20] Although the case did not settle at mediation, counsel for Defendants and Class Counsel renewed settlement discussions after full briefing of Defendants' motions for decertification and summary judgment.[21]  As a result of these subsequent efforts, the Parties reached a class-wide settlement that is hereby submitted to the Court for

---

[17] *See* Wills Decl., ¶ 15.
[18] *See* Wills Decl., ¶ 15.
[19] *See* Wills Decl., ¶ 16.
[20] *See* Wills Decl., ¶ 16.
[21] *See* Wills Decl., ¶ 16.

approval. Counsel for the parties have therefore fully investigated the law as applied to the facts discovered regarding Plaintiffs' claims, and potential defenses thereto, and the damages claimed by Plaintiffs.[22]

### 4.    The Risk and Delay that Plaintiffs Would Face Absent Settlement Are Significant

Absent settlement, Plaintiffs would face real risks on the merits. In addition, they would face a lengthy delay before receiving any potential recovery. If Plaintiffs prevailed on some or all of their claims at trial, they would almost certainly face an appeal by Defendants.  Class Counsel therefore estimates that even if this Action was 100% successful at every stage of future litigation, Class Members and Aggrieved Employees would not receive any relief for years.[23]

Thus, the proposed Settlement confers significant and timely relief to Plaintiffs without further delay by eliminating the substantial risk of Plaintiffs receiving no recovery whatsoever.

### 5.    Experienced Counsel Support the Reasonableness of the Settlement

In addition, whether a proposed settlement is fair, reasonable and adequate necessarily requires an evaluation by the attorneys for the parties based upon a comparison of "'the terms of the compromise with the likely rewards of litigation.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020) (quoting *Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See Campbell*, 951 F.3d at 1122; *see also Amador v. City of Ceres*, No. 1:17-cv-00552-DAD-BAM, 2019 WL 935496, at *5 (E.D. Cal. Feb. 26, 2019) (order granting approval of the class action settlement where counsel "ha[d] over fifteen years'

---

[22] *See* Wills Decl., ¶ 16.
[23] *See* Wills Decl., ¶ 23.

experience as an attorney, and specialize[d] in actions under California wage laws and the FLSA.").

Class Counsel, Rhonda H. Wills of Wills Law Firm, PLLC, is highly experienced in complex and class action litigation.[24] Ms. Wills has been appointed class counsel and lead counsel through both certification and settlement of numerous wage and hour class and collective actions.[25] Plaintiffs' counsels' experience in wage and hour class and collective actions was integral in evaluating the strengths and weaknesses of the case and the reasonableness of the settlement.[26]

Class Counsel believes this settlement is fair, reasonable and adequate, and is in the best interest of the class in light of all known facts and circumstances, including the risk of loss on the merits, and the significant costs and delay and numerous potential appellate issues.[27] Although Defendants contend that they have no liability in this case, Defendants' Counsel share Class Counsel's belief that the settlement represents a fair and adequate settlement given the risks, delay, and uncertainty associated with the Action.

Thus, counsel for the parties believe that under the proposed Settlement, Class Members and Aggrieved Employees will receive substantial benefits and will achieve the desired relief sought by the claims brought in the present Action, in the most expeditious and efficient manner practicable.[28]

## C.   The Proposed Service Awards to the Class Representatives Are Reasonable

Plaintiffs also request, and Defendants do not oppose, payment of service awards to Class Representatives Louis Geiger,  Christina Gomez, Amanda Haynes, and Gara Booten, in the amount of $5,000.00 each, as reasonable additional

---

[24] *See* Wills Decl., ¶ 7.
[25] *See* Wills Decl., ¶¶ 7, 8.
[26] *See* Wills Decl., ¶ 24.
[27] *See* Wills Decl., ¶ 25.
[28] *See* Wills Decl., ¶ 25.

compensation for the time and effort expended by them in connection with the initiation and maintenance of the Action and for their agreement to provide Defendants with a General Release and their execution of separate individual settlement agreements containing releases of any and all claims.

Class Representatives Louis Geiger, Christina Gomez, Amanda Haynes, and Gara Booten performed their duties admirably by working with their counsel, submitting to full-day depositions, responding to discovery requests, attending mediation, and participating in the settlement of this matter.[29]

The requested class representative service awards are well within the accepted range of awards. *See e.g. Louie v. Kaiser Foundation Health Plan, Inc.*, NO. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314,*6 (S.D. Cal. Oct. 6, 2008) (awarding $25,000 service award to each of six plaintiffs in overtime class action); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8509, *52 (N.D. Cal. Jan. 17, 2007) (awarding $25,000 enhancement award in overtime class action and a pool of $100,000.00 in enhancements); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294,  299-300 (N.D. Cal. 1995) (awarding enhancement award of $50,000). As explained in *Glass*, service awards are routinely awarded to class representatives to compensate the employees for the time and effort expended on the case, for the risk of litigation, for the fear of suing an employer and retaliation therefrom, and to serve as an incentive to vindicate the statutory rights of all employees. *Glass*, 2007 U.S. Dist. LEXIS 8509 at *18.

If preliminary approval is granted, the requested service award amounts will be clearly disclosed in the Notice of Pendency of Class and Collective Action and Proposed Settlement, and all Class Members will have the opportunity to object to or otherwise comment on the proposed amounts.

---

[29] *See* Wills Decl., ¶ 26.

### D. The Proposed Payments to Plaintiffs for Attorneys' Fees and Litigation Expenses Are Reasonable

At the final approval hearing, and through separate motion, Plaintiffs' counsel will seek attorneys' fees in an amount not to exceed $199,600.00, which is 40% of the value of the $499,000.00 Gross Settlement Amount. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 35.b] This percentage is well within the accepted range of attorneys' fees. *See e.g., Flores v. TFI Int'l Inc.*, No. 12-cv-05790-JST, 2019 WL 1715180, at *10-11 (N.D. Cal. Apr. 17, 2019) (approving attorneys' fees of $2,900,000, representing "61 percent of the total amount paid by Defendants" in a FLSA collective action settlement, explaining that "the award is reasonable under the facts of this case"); *Rivas v. BG Retail, LLC*, No. 16-cv-06458-BLF, 2020 U.S. Dist. LEXIS 8712, at *23-24 (N.D. Cal. Jan. 16, 2020) (concluding that plaintiffs' counsel's requested attorneys' fees of "approximately 45% of the total recovery" in a wage and hour class action settlement were reasonable); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) ("case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in case in which the common fund is relatively small."); *Gomez v. H & R Gunlund Ranches, Inc.*, No. CV F 10-1163 LJO MJS, 2011 WL 5884224, at *5 (E.D. Cal. Nov. 23, 2011) (approving fees at 45% of the settlement fund).

This case has been actively and heavily litigated for nearly three years, and Class Counsel's aggregate lodestar is currently almost $1 million, well above the requested attorneys' fee award.[30]  Due to the high stakes involved in terms of both certification and merits issues, wage and hour class actions are vigorously defended, and this case was no exception.

To ensure that this case was properly prosecuted, Class Counsel was also precluded from taking on other cases, and in fact had to turn away other meritorious

---

[30] *See* Wills Decl., ¶ 27.

fee generating cases.[31] This case was accepted on a contingency basis, with Class Counsel advancing significant funding for litigation expenses over nearly three years, including substantial deposition costs, mediator fees, legal research fees, and significant printing, copying and scanning costs with respect to the thousands of records produced by Defendants.[32]

At the final approval hearing, Plaintiffs' counsel will also seek reimbursement of litigation expenses in an amount not to exceed $30,000.00, to be paid from the Gross Settlement Amount. [Joint Stipulation of Class and PAGA Settlement and Release, ¶ 35.b.] If preliminary approval is granted, the requested attorneys' fees and reimbursement of litigation expenses amount will be clearly disclosed in the Notice of Pendency of Class and Collective Action and Proposed Settlement, and all Class Members will have the opportunity to object to or otherwise comment on the proposed amount.

The proposed payments for attorneys' fees and litigation expenses in this Action are very reasonable, especially in light of the fact that the Settlement's monetary relief for the Class Members' overtime and wage statement claims constitutes an approximate full recovery of each Class Members' unpaid overtime and wage statement penalties.[33] The Settlement will also require payment of a collective total of $88,943.75 to Aggrieved Employees and the LWDA to satisfy Plaintiffs' PAGA claim, which represents a substantial percentage (17.82%) of the total gross Settlement Amount.

Accordingly, and as Plaintiffs will further detail through separate motion, the attorneys' fees and expenses sought by Class Counsel are reasonable under the facts of this case.

---

[31] *See* Wills Decl., ¶ 28.
[32] *See* Wills Decl., ¶ 28.
[33] *See* Wills Decl., ¶ 29.

# VI.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.


DATED:  September 15, 2020          Respectfully submitted,

*/s/ Rhonda H. Wills*
Rhonda H. Wills
SBN 323435
rwills@rwillslawfirm.com
WILLS LAW FIRM, PLLC
1776 Yorktown, Suite 570
Houston, Texas  77056
Telephone: (713) 528-4455
Facsimile: (713) 528-2047

ATTORNEY FOR PLAINTIFFS

1

## **PROOF OF SERVICE**

2

I certify pursuant to 28 U.S.C. § 1746 that on September 15, 2020, I served the

3

foregoing document as follows:

4

5

***Via ECF (Electronic Filing)***
J. SCOTT CARR

6

JOSEPH W. OZMER II

7

KRISTAPOR VARTANIAN
ATTORNEYS FOR DEFENDANTS

8

9

*/s/ Rhonda H. Wills*

10

Rhonda H. Wills

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28